UNITED STATES of America,
Plaintiff-Appellee,

v.

Alfred SMITH, Jr., Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Irvin WILLIAMS, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph KOMOK, Defendant-Appellant.

Nos. 76–3349 to 76–3351.

United States Court of Appeals,
Ninth Circuit.

Feb. 16, 1978.

Rehearing and Rehearing En Banc
Denied May 12, 1978.

Keith L. Kessler (argued), William J. Bender (argued), Seattle, Wash., Denton P. Andrews (argued), Gig Harbor, Wash., for defendants-appellants.

John Obenour, Asst. U.S. Atty. (argued), Tacoma, Wash., for plaintiff-appellee.

Before KILKENNY, SNEED and KENNEDY, Circuit Judges.

KENNEDY, Circuit Judge:

Appellants, three male inmates of the federal penitentiary at McNeil Island in Washington, committed forcible acts of sodomy upon another male prisoner. They were convicted under the Assimilative Crimes Act, 18 U.S.C. § 13, by application of a Washington statute, Wash.Rev.Code Ann. § 9.79.170 (1977),[1] which defines the offense of rape to include such acts. *Id.* § 9.79.140.[2] Appellants Williams and Smith were convicted of three counts under the statute and appellant Komok was convicted of one count. Appellants Williams and Smith were also convicted of assault with intent to commit a felony under 18 U.S.C. § 113.

Appellants contend that Congress did not intend to permit reference to state law for punishment of the sexual conduct in question, and that in any event to do so discriminates against them by reason of their sex in violation of the equal protection clause. It is further contended that, assuming the Assimilative Crimes Act does incorporate the Washington statute, the minimum pris-

---

1. The Washington statute provides:

(1) A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person not married to the perpetrator by forcible compulsion where the perpetrator or an accessory:

(a) Uses or threatens to use a deadly weapon; or

(b) Kidnaps the victim; or

(c) Inflicts serious physical injury; or

(d) Feloniously enters into the building or vehicle where the victim is situated.

Wash.Rev.Code Ann. § 9.79.170 (1977).

2. . . . (1) "Sexual intercourse" (a) has its ordinary meaning and occurs upon any penetration, however slight, and

(b) Also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex, . . . and

(c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

Wash.Rev.Code Ann. § 9.79.140 (1977).

on term provisions of the Washington statute are not applicable to sentencing for the federal offense. We affirm the convictions but rule that the state sentencing provision which requires a minimum period of confinement was not binding on the district court judge. We therefore remand the case to the district court for resentencing.

Appellants argue that the Washington state statute may not be incorporated under the Assimilative Crimes Act since to do so would be to redefine and enlarge the definition of rape set forth by Congress in 18 U.S.C. § 2031. They cite *Williams v. United States*, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946), wherein the Court held the Assimilative Crimes Act did not incorporate an Arizona statute prohibiting sexual intercourse with a girl under the age of eighteen years. The Court based its decision on a recognition that Congress had already covered the specific act committed by the defendant in a statute punishing adultery and had also legislated to proscribe the generic act of having carnal knowledge by a statutory rape section fixing the age of consent at sixteen years.

■■■ The federal statutory scheme with respect to the conduct punished in this case differs from the relevant scheme in *Williams*. Section 2031 of title 18 [3] has been interpreted to punish rape as defined at common law, that is, carnal knowledge of a female by force or threat of force. *Henry v. United States*, 432 F.2d 114, 119 (9th Cir. 1970), *modified*, 434 F.2d 1283, *cert. denied*, 400 U.S. 1011, 91 S.Ct. 576, 27 L.Ed.2d 625 (1971); *see United States v. Dupree*, 544 F.2d 1050, 1051 (9th Cir. 1976); *Oliver v. United States*, 230 F. 971 (9th Cir.), *cert. denied*, 241 U.S. 670, 36 S.Ct. 721, 60 L.Ed. 1230 (1916). Hence Congress has neither proscribed the specific acts committed by these defendants nor the generic conduct in which they engaged in such a way as to indicate an intent to "[cover] the field with uniform federal legislation . . . ." *Williams*, 327 U.S. at 724, 66 S.Ct. at 785.

There is no federal statute punishing the specific acts perpetrated by a homosexual rapist. *See Smayda v. United States*, 352 F.2d 251 (9th Cir. 1965), *cert. denied*, 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966).

■■■ In arguing that Congress did act with reference to the type of conduct in question here when it passed the statute proscribing rape, appellants rely upon the policy reflected by the Washington statute, which defines rape of a female and the act of sodomy as one and the same offense. Quite apart from the observation that congressional intent in passing the Assimilative Crimes Act in 1948 cannot be established persuasively by reference to a Washington statute enacted in 1975, the act of rape is not, for federal purposes, generically the same as the acts of sodomy committed here. The Washington statute reflects an approach to the delicate problem of defining sexual offenses which is an exception among the states, not the rule. The Model Penal Code and almost all state criminal codes classify sodomy as a crime distinct from common law rape. Model Penal Code §§ 213.1, 213.2 (1962); *id.* § 207.5, Comment at 279 (Tent.Draft No. 4, 1955); Comment, Sodomy Statutes—A Need for Change, 13 S.D.L.Rev. 384 (1968). Sodomy has traditionally been defined as an offense generically distinct from the crime of rape. R. Perkins, Criminal Law 389–92 (2d ed. 1969). Congress enacted the Assimilative Crimes Act against this background. We conclude that enactment of the federal rape statute does not constitute legislative action with reference to acts of sodomy. Therefore, Congress did not intend to bar incorporation through the Assimilative Crimes Act of a state statute which makes the act of sodomy a criminal offense.

■■■ Appellants contend that since their conduct is proscribed by 18 U.S.C. § 113(b) (assault with intent to commit a felony), the reasoning of *Williams* precludes application of the Assimilative Crimes Act. We reject

**3.** The federal rape statute provides:
Whoever, within the special maritime and territorial jurisdiction of the United States, commits rape shall suffer death, or imprisonment for any term of years or for life. 18 U.S.C. § 2031.

this argument because the federal assault statute does not punish "the precise acts upon which the [Assimilative Crimes Act] conviction depends . . . ." *Williams*, 327 U.S. at 717, 66 S.Ct. at 781. Rape as defined by the Washington statute requires sexual contact between perpetrator and victim, whereas the federal statute prohibiting assault does not require physical contact, *United States v. Bell*, 505 F.2d 539 (7th Cir. 1974), *cert. denied*, 420 U.S. 964, 95 S.Ct. 1357, 43 L.Ed.2d 442 (1975), and in cases where the victim is physically touched does not require the contact to be a sexual one. The two crimes are readily distinguishable. Congressional specificity with respect to assault does not preclude incorporation of the offense in question here under the Assimilative Crimes Act.

Appellants argue that application of the Washington statute in an Assimilative Crimes Act prosecution for forcible sodomy constitutes denial of equal protection. Conviction under the Washington statute carries a minimum sentence of twenty years while the specific federal rape statute provides no such minimum sentence. It is argued that the difference in the penalties for these offenses constitutes unlawful discrimination on the basis of sex. We cannot agree.

■ The Washington statute, when operating exclusively in the state sphere, imposes the same punishment for all sexual offenses of the types here considered. Sexual abuses by a male or female against a victim of either sex carry the same sanction. The federal rape statute assigns a lower penalty, but it applies only to a male who rapes a female. We have recently held that the perpetrator of a crime may not construct an equal protection claim based on a distinction resulting from the sex of his victim, *United States v. Green*, 554 F.2d 372, 375 (9th Cir. 1977); *see United States v. Garrett*, 521 F.2d 444 (8th Cir. 1975), and to the extent appellants' equal protection argument is designed to state such a claim, we reject it.

■ We do not imply, even were we to accept the doubtful assumption that this classification turns on sexual characteristics of the offender recognized by the equal protection clause, that the statutory scheme fails to bear a fair and substantial relation to an important government interest. The physical abuses against the victim's anatomy committed in this case were acts distinct in kind from the act of rape as proscribed by federal statute and defined by common law. It is rational to determine that the harm, both physical and mental, suffered by victims of these two crimes are of a different quality in each instance. These distinctions are reflected in traditions and community attitudes that have prevailed for centuries, and penal laws may properly take account of such differences by assigning a separate generic classification to each offense. The separate classifications have utility in various respects. For example, the Model Penal Code section proscribing rape defines aggravating circumstances that increase the degree of the felony, but these aggravations are not provided for in the section covering the offense of sodomy. Model Penal Code §§ 213.1, 213.2 (1962). In the instant case, the use of the distinction is a demarcation for giving effect to a federal or state law enforcement policy. If a crime is distinct, or if it can rationally be defined as such, we cannot invalidate Congress' choice of a scheme by which punishment for that crime depends upon local, rather than federal, law. It is quite beside the point that the two offenses have been treated the same under Washington law. Congressional policy, not state policy, controls the case. The equal protection clause is not offended when Congress punishes one offense by assimilation of a state statute but provides its own definition and punishment for a rationally distinguishable offense.

■ We turn to a consideration of the applicable sentencing requirements for the Assimilative Crimes Act convictions. The Act provides that upon conviction under an applicable state statute the defendant shall be "subject to a like punishment." 18 U.S.C. § 13. The Washington statute requires that persons convicted of the sexual

offenses involved here receive a twenty-year prison term, of which three years must be served in confinement.[4] The trial court imposed a twenty-year sentence as provided by the state statute, and in this it was correct. It is settled that a state statute that fixes the length of a prison term should control the sentence imposed by federal courts under the Assimilative Crimes Act. *Fields v. United States*, 438 F.2d 205, 207 (2d Cir.), *cert. denied*, 403 U.S. 907, 91 S.Ct. 2214, 29 L.Ed.2d 684 (1971); *Smayda v. United States*, 352 F.2d 251, 253 (9th Cir. 1965), *cert. denied*, 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966); *United States v. Gill*, 204 F.2d 740, 742 (7th Cir.), *cert. denied*, 346 U.S. 825, 74 S.Ct. 42, 98 L.Ed. 350 (1953). This procedure furthers Congress' intent that federal prosecutions under the Assimilative Crimes Act should reflect local policies of the various states.

More difficult, however, is the question of whether the defendant, once sentenced to the federal facility, must be confined three years without parole, as provided by the Washington statute. The trial court considered that this state provision was also binding. Accordingly, the court sentenced the defendant pursuant to 18 U.S.C.A. § 4205(b)(1) (Supp.1977), designating that a three-year minimum term be served before the prisoner may be eligible for parole. The trial court was careful to explain that its sentence was not imposed in the exercise of its discretion, but rather because it interpreted the Assimilative Crimes Act as requiring it to fashion the federal sentence by giving effect to the minimum confinement term provided for by state law. Expressing concern over this position, the trial court carefully stated its ruling in the record to assist us on review.

■ Once the court has applied state law to determine the applicable term of years for the sentence, the Assimilative Crimes Act does not further require adherence to state policy with reference to parole eligibility. The prisoner is a federal prisoner, and during his confinement the conditions for his release on parole should be controlled by federal correctional policies. To hold otherwise would be to have two classes of prisoners serving in the federal prisons: Assimilative Crimes Act prisoners and all other federal prisoners. That situation would be disruptive to correctional administration, and we do not think Congress intended this result.

Prior to the 1976 revisions of the federal parole chapter, Parole Commission and Reorganization Act, Pub.L. No. 94–233, 90 Stat. 219 (1976), the parole provision, which was closely equivalent to what is now section 4205(a)–(b) of title 18, did not apply "to any offense for which there is provided a mandatory penalty." Joint Resolution to Improve the Administration of Justice, Pub.L. No. 85–752, § 7, 72 Stat. 845 (1958). That phrase has been deleted from the statute as amended. The congressional history is silent on the reason for the change, but one permitted inference is that elimination of the restrictive provision indicates an intent that the federal parole statute should apply uniformly to federal prisoners.

■ The current version of section 4205 states that the parole chapter is not to be construed as providing parole eligibility where the prisoner would be "ineligible for . . . release under any other provision of law." 18 U.S.C.A. § 4205(h) (Supp.1977), but legislative history of this subsection indicates that it was intended to preserve "[e]xisting powers of the sentencing court and certain special provisions relating to eligibility for parole . . . ." H.R.Rep. No. 94–838, 94th Cong., 2d Sess. 25 (1976), *reprinted in* [1976] U.S. Code Cong. & Admin. News pp. 351, 357. This explanation is

---

4. Washington provides for punishment of this offense as follows:

. . . (2) Rape in the first degree is a felony, and shall be punished by imprisonment in the state penitentiary for a term of not less than twenty years. No person convicted of rape in the first degree shall be granted a deferred or suspended sentence except for the purpose of commitment to an inpatient treatment facility: Provided, That every person convicted of rape in the first degree shall be confined for a minimum of three years . . . . .

Wash.Rev.Code Ann. § 9.79.170 (1977).

consistent with preserving the power of the court to require a one-third minimum period as a *discretionary* matter under section 4205(b),[5] and to permit Congress to mandate a minimum period for certain crimes if it chooses to do so. Absent a specific directive from Congress that state mandatory confinement periods must be followed under the Assimilative Crimes Act, we decline to allow such a potentially disruptive element to be incorporated into the federal parole system.

Finally, we note that under section 4205(g) the court, upon motion of the Bureau of Prisons, may reduce any minimum term for which the defendant was sentenced. This indicates that Congress intended to allow the courts, upon a proper showing, to exercise a continuing discretion to modify the sentence, a policy inconsistent with requiring imposition of a minimum term in this case.[6]

Appellant Smith would have us find that the district court erred in refusing to consolidate all three rape counts into a single count, arguing that his conduct could be characterized as one continuous act. We have examined the record and find adequate evidence to support convictions on three separate counts.

There is also some question as to whether assault with intent to commit a felony as applied to the acts perpetrated in this case is a lesser included offense with respect to a charge of rape. *See United States v. Stone,* 472 F.2d 909, 915 (5th Cir. 1973). Appellants' brief raises this issue obliquely, but since there was never a motion in the trial court to dismiss the assault charge, Smith and Williams have waived objection to it. Fed.R.Crim.P. 12(b); *see Mitchell v. United*

*States,* 434 F.2d 230 (9th Cir. 1970), *cert. denied,* 402 U.S. 946, 91 S.Ct. 1636, 29 L.Ed.2d 115 (1971). Moreover, the sentences on appellants' assault convictions are to run concurrent to their sentences for rape, and the concurrent sentence rule makes our consideration of this issue unnecessary. *See United States v. Ingman,* 541 F.2d 1329, 1331 (9th Cir. 1976); *United States v. Meeker,* 527 F.2d 12, 14 (9th Cir. 1975).

We have examined appellants' other contentions and find them wholly without merit.

The judgments of conviction are affirmed; appellants' sentences are vacated and the cases are remanded for sentencing in accordance with this opinion.

---

**5.** The federal parole statute provides in relevant part:

(b) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall

not be more than one-third of the maximum sentence imposed by the court . . . . 18 U.S.C.A. § 4205(b) (Supp.1977).

**6.** *Cf. United States v. Dunn,* 545 F.2d 1281 (10th Cir. 1976). There it was held the Federal Youth Corrections Act should be substituted for state sanctions after an Assimilative Crimes Act conviction (so long as the state maximum sentence is not exceeded), thus indicating that federal policies should apply during the custodial period.