**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Sharon Lorraine DAVIS, aka Sharon Lorraine Testa, Defendant–Appellant.**

No. 87–5599
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 28, 1988.

Lucien B. Campbell, Federal Public Defender, and Carolyn Fuentes, Asst. Federal Public Defender, San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., San Antonio, Tex., Joseph D. Wilson, Dept. of Justice, Washington, D.C., and Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before POLITZ, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

Defendant Sharon Lorraine Davis entered a plea of guilty to six counts of misdemeanor theft in violation of 18 U.S.C. § 13 and Tex.Penal Code Ann. § 31.03. Thereafter, as part of Davis' sentence, a federal magistrate imposed a special assessment of $25 on each count, for a total of $150 to be paid by Davis pursuant to 18 U.S.C. § 3013. Davis appeals only the special assessment portion of her sentence, contending that the $150 assessment violates the terms of the Assimilative Crimes Act (ACA), 18 U.S.C. § 13, because the assessment is not "like punishment" within the meaning of the ACA. Since Texas law, like federal law, imposes a monetary assessment on defendants convicted of felonies and misdemeanors, we conclude that the special assessment imposed on Davis pursuant to § 3013 in the instant case was "like punishment" within the meaning of the ACA; therefore, we affirm the district court.

I. FACTS AND PROCEDURAL HISTORY

On six occasions in December 1984 and January 1985, Sharon Lorraine Davis made personal checks belonging to three other people payable to herself and forged the signature of the owner on the check. Davis then cashed the forged checks at various locations on Lackland Air Force Base, a federal enclave in San Antonio, Texas. Thereafter, Davis was indicted under the ACA on six counts of forgery of a check, in violation of the Texas forgery statute, Tex.Penal Code Ann. § 32.21(a)(1)(A)(i), and one count of theft of government property in violation of 18 U.S.C. § 661. Pursuant to a plea bargain agreement, Davis agreed to plead guilty to a superceding information charging her with six counts of misdemeanor theft of personal property on a military installation in violation of the ACA, 18 U.S.C. § 13, incorporating Tex.Penal Code Ann. § 31.03. A federal magistrate subsequently sentenced Davis to a total suspended sentence of eighteen months and supervised probation for a period of two years with the special condition that Davis make restitution in the amount of $1480. In addition, the magistrate imposed a special mandatory assessment of $25 per count, for a total of $150, pursuant to 18 U.S.C. § 3013.

Thereafter, Davis appealed to the district court only the imposition of the § 3013 special assessment on the basis that the

assessment violated the terms of the ACA. Relying primarily on the plain language of § 3013 which provides that a mandatory assessment must be imposed on all individuals convicted of any federal offense, the district court affirmed the magistrate's imposition of the special assessment. Davis appeals.

## II. DISCUSSION

### A. *The Assimilative Crimes Act (ACA) and § 3013*

As part of the Comprehensive Crime Control Act of 1984, Congress enacted 18 U.S.C. § 3013, which mandates that a special monetary assessment be imposed on convicted persons. Section 3013 states:

(a) The court shall assess on any person convicted of an offense against the United States—

(1) in the case of a misdemeanor—

(A) the amount of $25 if the defendant is an individual; and

(B) the amount of $100 if the defendant is a person other than an individual; and

(2) in the case of a felony—

(A) the amount of $50 if the defendant is an individual; and

(B) the amount of $200 if the defendant is a person other than an individual.

(b) Such amount so assessed shall be collected in the manner that fines are collected in criminal cases.

18 U.S.C. § 3013. In accordance with congressional intent, monies collected by way of the assessment are used to fund the Crime Victims Assistance Fund, whereby the federal government provides financial assistance to victims of crime through qualifying state victims assistance funds. 42 U.S.C. §§ 10601(b)(2), 10602. *See* S.Rep. No. 497, 98th Cong., 2d Sess. 1, *reprinted in* 1984 U.S. Code Cong. & Ad.News 3182, 3607.

The Assimilative Crimes Act, 18 U.S.C. § 13, provides:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and *subject to a like punishment.*

(Emphasis added.) By enacting the ACA, Congress opted not to adopt a separate criminal code for federal enclaves; instead, Congress chose to conform the criminal law of federal enclaves with the criminal laws of the respective states in which the enclaves are situated except in cases of specific federal crimes. *See United States v. Sharpnack,* 355 U.S. 286, 293, 78 S.Ct. 291, 295–96, 2 L.Ed.2d 282 (1958); *U.S. v. King,* 824 F.2d 313, 315 (4th Cir.1987); *United States v. Mayberry,* 774 F.2d 1018, 1020 (10th Cir.1985). Essentially a "gap-filling" measure, the ACA supplements federal criminal law on federal enclaves by assimilating the entire substantive criminal law of the state wherein the federal enclave is located, "including laws relating to the definition and scope of an offense and laws governing the manner in which an offense is to be punished." *King,* 824 F.2d at 315.

This Court has not yet addressed the interplay of § 3013 and the ACA; the interrelationship of these two statutory schemes is squarely presented by the facts of this case. It is axiomatic that a "violation of state law incorporated by the ACA into federal law is 'an offense against the United States.'" *King,* 824 F.2d at 315–316 (quoting *United States v. Press Publishing Co.,* 219 U.S. 1, 10, 31 S.Ct. 212, 214, 55 L.Ed. 65 (1911)). *See also United States v. Brown,* 608 F.2d 551, 553 (5th Cir.1979) ("[P]rosecution under ACA is not for enforcement of state law but for enforcement of federal law assimilating a state statute."). By its express terms, § 3013 provides for a mandatory assessment on any person convicted of an "offense against the United States." Therefore, as a general rule, the § 3013 assessment applies to individuals convicted under the terms of the ACA. However, this gen-

eral rule is subject to the overriding exception that individuals convicted under the ACA shall only be "subject to a like punishment" to that provided by assimilated state law. *See Mayberry*, 774 F.2d at 1020 ([T]he "like punishment" language "has consistently been construed to require punishment only in the way and to the extent that the same offense would have been punishable if the territory embraced by the federal reservation or enclave where the crime was committed remains subject to the jurisdiction of the state.").

In the instant case, the district court affirmed the magistrate's imposition of the assessment, concluding that the plain language of § 3013 and the ACA dictated that a special mandatory assessment must be imposed on all individuals convicted of any federal offense; since a violation of the ACA is a federal offense, although assimilated by state law, individuals convicted under the ACA are subject to the assessment. Further, the district court concluded that § 3013 "does not prohibit the imposition of an additional punishment on those convicted of an assimilative crime."

■ We recognize that Congress, in December 1987, amended § 3013 to make the federal assessment specifically applicable to all individuals convicted under the ACA, regardless of whether state law provides for a "like punishment." However, since Davis was sentenced prior to the 1987 amendment, that amendment is not applicable in the instant case.[1] Thus, while we affirm the decision of the district court, we are not persuaded that defendants sentenced under the ACA prior to the 1987 congressional amendment are in all instances subject to the special assessment provisions of § 3013. Rather, we conclude that § 3013 assessments may not be imposed on individuals sentenced prior to the 1987 amendment unless the assimilated state law provides a "like punishment." As Davis was sentenced prior to the effective date of the 1987 amendment, to determine if the monetary assessment imposed against Davis is valid, our inquiry becomes whether Davis would be subject to "a like punishment" under Texas law. In the instant case, a "like punishment" is a comparable assessment.[2]

### B. *Like Punishment*

For many of the same reasons that Congress promulgated § 3013, the Texas legislature enacted the Crime Victims Compensation Act providing for the imposition of

---

1. The 1987 congressional amendment specifically added the following language to § 3013: "(d) For the purposes of this section, an offense under section 13 of this title [the ACA] is an offense against the United States." Criminal Fine Improvements Act of 1987, Pub.L. No. 100-185, § 3, 101 Stat. 1279 (1987). The legislative history of this amendment reflects that Congress amended § 3013 to make explicit its intent that the federal assessments be applied to convictions under the ACA. In this respect, Congress stated:

New section 3013(d) clarifies that judges must impose a special assessment upon persons convicted of an offense under the Assimilative Crimes Act. Section 3013 currently requires the court to impose a special assessment upon any person convicted of a federal offense. Several courts have held that special assessments are not applicable to convictions under the Assimilative Crimes Act. Because the Committee sees no reason to distinguish, for purposes of special assessments, convictions under the Assimilative Crimes Act from convictions under other provisions of federal law, new section 3013(d) overturns those decisions.

H.R.Rep. No. 390, 100th Cong., 1st Sess. 4 (1987), U.S.Code Cong. & Admin.News 1987, pp. 2137, 2140 (footnotes omitted).

2. To conclude that Davis received a "like punishment" when the magistrate imposed a special assessment pursuant to § 3013, it is necessary to also conclude that a § 3013 assessment is a form of "punishment." The only two Circuits to address this specific issue determined that the assessment was "punishment" within the contemplation of the ACA. *King*, 824 F.2d 313; *Mayberry*, 774 F.2d 1018. For the reasons outlined in *King* and *Mayberry*, we likewise conclude that a § 3013 assessment is punishment for purposes of the ACA; however, we specifically decline to address whether an assessment imposed pursuant to § 3013 is a punitive measure for purposes of invoking the rule of lenity. *See United States v. Dobbins*, 807 F.2d 130 (8th Cir.1986) and *United States v. Donaldson*, 797 F.2d 125 (3rd Cir.1986), wherein the courts concluded that the purpose of § 3013 was compensatory to aid victims of crimes, and not to punish criminals; therefore, § 3013 did not constitute punishment for purposes of invoking the rule of lenity.

monetary assessments against individuals convicted of crimes to be paid into a victims crime fund. Tex.Rev.Civ.Stat.Ann. Art. 8309–1. The Texas assessment scheme, while similar to the federal scheme, is not identical. It is the differences between the two statutes which Davis asserts render an assessment under the Texas compensation system not "punishment" within the context of the ACA.

Specifically, art. 8309–1, § 14(b) provides in pertinent part that

A person shall pay $20 as a court cost on conviction of any felony, $15 as a court cost on conviction of a violation of a municipal ordinance punishable by a fine of more than $200 or on conviction of a misdemeanor punishable by imprisonment or by a fine of more than $200, and $3 as a court cost on conviction of a violation of a municipal ordinance punishable by a fine of not more than $200 or on conviction of a misdemeanor punishable by a fine of not more than $200, other than a conviction of a misdemeanor offense or violation of a municipal ordinance relating to pedestrians and the parking of motor vehicles.... If a person is granted deferred adjudication ... the person shall pay as a court cost the amount that the person would have otherwise been required to pay under the subsection had the adjudication not been deferred and had the person been finally convicted of the offense.

Art. 8309–1, § 14(b). Davis seeks to persuade this Court that the Texas special assessment is not "punishment" by contending that the Texas assessment is essentially imposed as a court cost. Indeed, Davis points out that the statutory language of art. 8309–1 refers to the Texas assessment as a court cost. We are not convinced that the labeling of an assessment as a court cost is dispositive on the question of its character. In *United States v. Robertson*, 638 F.Supp. 1202 (E.D.Va. 1986), the court collected and analyzed the various state victim assistance statutes and classified those statutes generally into three categories for purposes of determining a statute's punitive character:

(1) schemes funded from general state resources; (2) schemes funded solely, or mainly, from monies paid by convicted criminals; and (3) schemes funded by a combination of general state resources and monies paid by convicted criminals. *Id.* at 1207–08. (footnotes omitted). Schemes within the second tier—funded from monies paid by convicted criminals— are restitutionary and, as such, punitive in nature. *Id.* at 1208. In *Robertson*, the court concluded that the Virginia compensation statute, which labeled assessments as "additional costs," derived mainly from the pocketbooks of convicted criminals and was therefore, punitive in character. *Id.* Similar to the Virginia compensation scheme, art. 8309–1 generates its revenue primarily from individuals convicted of crimes. Although labeled as a court cost, the fees "are collected in the same manner as other fines." Art. 8309–1, § 14(c). Thus, the Texas assessment scheme also falls within the second group of the *Robertson* classifications and is a punitive measure.

Davis attempts to distinguish the Texas assessment scheme from the federal scheme on the basis that not only convicted individuals pay monies into the compensation fund, but individuals who receive deferred adjudication pay monies as well. We reject this distinction as one which removes the punitive taint from the Texas assessment. Defendants who are granted deferred adjudication are still individuals who have been charged with a crime; in this respect, the Texas assessment remains an additional burden which a defendant is required to bear to atone for his criminal acts. Additionally, the assessment varies in severity with the nature of the crime. Thus, we conclude that an assessment imposed upon a defendant pursuant to art. 8309–1 is "punishment" within the meaning of the ACA.

■ Having determined that the Texas assessment is punitive, we now turn to the question of whether or not the Texas assessment is "like punishment" within the context of the ACA. The term "like punishment" is incapable of precise definition;

instead, the term is defined by the particular facts of each case when considered in light of federal policy concerns. Davis relies on the definition of "like punishment" set forth by the Supreme Court in *United States v. Press Publishing Co.*, which states:

> [I]t is apparent that the statute, instead of fixing by its own terms the punishment for crimes committed on such reservations which were not previously provided for by a law of the United States, adopted and wrote in the state law, with the single difference that the offense, although punished as an offense against the United States, *was nevertheless punishable only in the way and to the extent that it would have been punishable if the territory embraced by the reservation remained subject to the jurisdiction of the state.*

219 U.S. at 9–10, 31 S.Ct. at 214 (emphasis added). Under the *Press Publishing* interpretation of "like punishment," the federal assessment imposed on Davis could only amount to the maximum assessment allowable under Texas law—$15 per count. Davis' reliance on *Press Publishing* in the instant case, however, is misplaced as the version of the ACA before the Supreme Court in 1911 when it rendered the *Press Publishing* decision provided that defendants convicted under the ACA should receive "the same punishment," rather than the current "like punishment" provision. Applying the plain meaning of the statutory language, "same" requires identity, while "like" requires similarity.[3]

We note that federal courts have consistently declined to assimilate provisions of state law through the ACA if the state law provision would conflict with federal policy. *See United States v. Pinto*, 755 F.2d 150, 154 (10th Cir.1985); *United States v. Vaughan*, 682 F.2d 290, 294–95 (2nd Cir.), *cert. denied*, 459 U.S. 946, 103 S.Ct. 261, 74 L.Ed.2d 203 (1982); *United States v. Smith*, 574 F.2d 988, 992–93 (9th Cir.), *cert. denied*, 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978); *United States v. Kendrick*, 636 F.Supp. 189 (E.D.N.C.1986). In *Pinto, Vaughan*, and *Smith,* the courts each rejected state provisions requiring minimum incarceration before parole, reasoning that the minimum-confinement provisions conflicted with federal policy. Similarly, in *Kendrick*, the district court refused to incorporate North Carolina law allowing up to two years of imprisonment for a drunk driving conviction when that state law conflicted with federal law limiting the power of United States magistrates to allow no more than a fine of $1000 or imprisonment for no more than one year for the same offense.[4]  636 F.Supp. at 191–92.

In the instant case, relying on the plain language of the term "like" which suggests similarity, and on the principle that state laws should be assimilated through the ACA in light of federal policy concerns, we conclude that the federal assessment provisions under § 3013 should be applied in full. Incorporation of the maximum assessments under Texas law, instead of the federal assessments, in situations such as that presented in the instant case would result in individuals convicted of an assimilative crime paying lower assessments than individuals convicted of other federal crimes. These limited assessments in ACA cases would be collected and processed the same as federal assessments. "Limitation of the special assessments to various amounts under state law is at odds with the uniform administration of the federal victim compensation program, of which the special assessments are a part...." *Robertson*, 638 F.Supp. at 1214. Therefore, the better result to facilitate the uniform

---

**3.** For an excellent discussion of the legislative history surrounding the amendment of the ACA in 1909, *see Robertson*, 638 F.2d 1202.

**4.** We recognize that in the above cases the federal courts addressed factual situations involving incarceration, rather than monetary fines. In each case, the courts refused to apply state punishment which would result in a harsher custodial sentence than would be imposed under federal law. In this regard, we intimate no opinion as to whether a federal court under the authority of the ACA may impose a stricter custodial sentence than that mandated by state law strictly on the basis of countervailing federal policy concerns.

and effective implementation of the victims compensation fund for federal offenses is to apply the federal assessments in full.

### III. CONCLUSION

In sum, because Texas law has provided for a "like punishment" to the § 3013 federal assessment, that assessment was properly applied to Davis in the instant case where Davis was sentenced prior to the 1987 amendment to § 3013. Furthermore, to promote the uniform administration of the federal Victim Compensation Program, the assessment against Davis was properly applied at the federal amount, rather than the maximum state assessment. For these reasons, the decision of the district court is

AFFIRMED.