UNITED STATES of America, Appellee,

v.

John Herbert EADES, Appellant.

UNITED STATES of America, Appellee,

v.

Larry F. WILSON, Appellant.

Nos. 78–5216, 79–5027.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 5, 1979.

Decided Feb. 4, 1980.

Peter D. Ward, Asst. Federal Public Defender, Baltimore, Md. (Charles G. Bernstein, Federal Public Defender, Baltimore, Md., Susan Preston, Third Year Law Student, on brief), for appellants.

Richard D. Bennett, Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty., and Lynne A. Battaglia, Asst. U. S. Atty., Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and PERRY,* District Judge.

WINTER, Circuit Judge:

These consolidated appeals present the question of whether, under the Assimilative Crimes Act, one may be charged and convicted of a third degree sexual offense in violation of Art. 27, § 464B(a)(1)(iii),

* Hon. Matthew J. Perry, United States District Judge for the District of South Carolina, sitting by designation.

Ann.Code of Md. (1976 Repl. Vol. and 1978 Cum.Supp.) which occurred on a federal reservation, when Congress has enacted 18 U.S.C. § 113 making simple assault and more aggravated forms of assault federal offenses. We hold that Congress has preempted the Maryland statute and that one may not be charged and convicted of the Maryland crime perpetrated on a federal reservation in that state.

This question is the sole one in the appeal in No. 79–5027, but the appeal in No. 78–5216 raises questions of alleged misjoinder of other crimes and alleged abuse of discretion on the part of the district court in declining to sever certain joined counts. We see no merit in these several contentions. Thus, we reverse both convictions under Maryland law but otherwise affirm.

I.

*No. 78–5216*

John Herbert Eades was charged in a 9-count indictment with a variety of offenses arising out of the following three major incidents which occurred at the United States Naval Academy, a federal reservation at Annapolis, Maryland:

On January 28, 1978, a female officer who was a member of the faculty, returned to the ladies locker room at McDonough Hall after having been swimming in the pool located in that building. She was standing in the shower room, wrapped in a towel, when she noticed a man, later identified as Eades, looking at her through a window in the shower room. Eades entered the room, approached her and backed her into a shower stall. He started to kiss her neck and forced her down on a ledge in the stall. While she sought to defend herself and to keep the towel wrapped around her, he placed his arm around her and started to move his hand down her side and leg. He succeeded in touching her left buttock through the towel and ran his hand down to

her knee. When Eades started to place his hand under the towel, she screamed, and Eades fled.

On January 30, 1978, Eades was apprehended in another locker room on the Academy grounds cutting the locks off lockers.

On February 4, 1978, a female cadet who was to be a member of the next entering class was in the ladies locker room at McDonough Hall. She was standing in front of her locker changing from her sweatshirt and bathing suit into her blouse. While only partially clothed, she noticed Eades standing but two feet from her. When she screamed, he grabbed her, threw her to the floor and banged her head on the floor. He continued to bang her head as she continued to scream, then he pulled down her lower undergarment and rubbed her genital area with both hands. Eventually, Eades abruptly left.[1]

Counts 1–4 of the indictment involved the incident on January 28, 1978, counts 5–8 concerned the second locker room assault on February 4, and count 9 referred to January 30. Eades was indicted for assault with intent to commit rape in violation of 18 U.S.C. § 113(a) (count 1), a third degree sexual offense in violation of Maryland law with respect to the first victim (count 2), simple assault of his first victim in violation of 18 U.S.C. § 113(e) (count 3), entry upon the Naval Academy for the purpose of committing assault with intent to rape, to engage in unlawful sexual conduct, and to commit assault with respect to his first victim in violation of 18 U.S.C. § 1382 (count 4), assault with intent to rape in violation of 18 U.S.C. § 113(a) with respect to his second victim (count 5), a third degree sexual offense in violation of Maryland law with respect to his second victim (count 6), assault by striking of his second victim in violation of § 113(d) (count 7), entry upon the Naval Academy for the purpose of com-

1. Eades also surprised the date of a midshipman and another young woman in the ladies room in a building at the Academy on February 3, 1978, when he opened the door apparently preparatory to entering. When Eades saw both, he closed the door and left. He was seen again on the morning of February 4, 1978, in the vicinity of the ladies locker room by a member of the faculty and his wife.

mitting a crime against his second victim in violation of 18 U.S.C. § 1382 (count 8), and entry upon the Naval Academy for the purpose of committing theft in violation of 18 U.S.C. § 1382 (count 9).

At trial, the jury acquitted Eades of the charges contained in counts 1 and 5 (assault with intent to rape) and counts 4 and 8 (unlawful entry for the purpose of committing sex crimes). He was convicted, however, on counts 2 and 6, charging the Maryland third degree sex offense with respect to both victims, counts 3 and 7, charging simple assault, and assault by striking, respectively, and count 9, entry upon the Academy grounds for the purpose of theft.

Prior to trial, Eades had unsuccessfully moved to sever various counts on the grounds of misjoinder and discretionary severance. He also sought to dismiss counts 2 and 6 on the grounds of improper use of the Assimilative Crimes Act, 18 U.S.C. § 13. The district court held this motion *sub curia* until after the jury's verdicts, but denied it in a published opinion, *United States v. Eades,* 455 F.Supp. 436 (D.Md.1978).

### No. 79–5027

Larry F. Wilson was charged with six offenses arising from his actions when he persuaded a young woman who was standing on the street in the District of Columbia at night awaiting a taxicab to accept his offer to drive her home in his car. After the young woman entered the car, he drove not to her home but to the Suitland Parkway, which is constructed on land acquired for the use of the United States and under its jurisdiction. While still driving the car, Wilson put his hand down his companion's skirt touching her sexual organs and said that he was going to have intercourse with her. Eventually the young woman was successful in grabbing the steering wheel and steering the car off of the road to the side where it became mired. While Wilson was seeking to extricate the car, the young woman jumped from it and was rescued by a United States Park Policeman.

Although Wilson was charged, *inter alia,* with kidnapping and several sexual offenses, he was convicted only of assault with intent to commit rape in violation of 18 U.S.C. § 113(a) and a third degree sexual offense in violation of Maryland law. A mistrial was declared with respect to the other charges.

In this appeal, Wilson raises no question about the correctness of his conviction under federal law of assault with intent to rape. Nor does he question that the evidence was legally sufficient to support his conviction of the Maryland third degree sexual offense if that charge were proper. But Wilson does contend that he was improperly charged and convicted of the Maryland crime because application of the state law to federal reservations in Maryland through the Assimilative Crimes Act has been preempted by the federal law on assault. Wilson unsuccessfully sought dismissal of the count of the indictment charging this crime prior to trial, but the district judge, relying upon *United States v. Eades,* supra, denied his motion to dismiss.

### II.

The Assimilative Crimes Act, 18 U.S.C. § 13, makes punishable the doing of acts or the omission to do acts on federal reservations which, "although not made punishable by an enactment of Congress, would be punishable if committed or omitted" within the jurisdiction of the state in which the reservation is situated. Upon conviction of a violation of such an assimilated state law, the offender shall be subject to the punishment prescribed by the state.

The Maryland statute under which both defendants were convicted proscribes as a "third degree sexual offense" sexual contact by one against the will and without the consent of another where the accused threatens or places the victim in fear of, *inter alia,* death, serious physical injury or kidnapping.[2] Art. 27, § 461, Ann.Code of

---

**2.** The pertinent portions of the text of § 464B follow:

§ 464B. Third degree sexual offense.

(a) *What constitutes.*—A person is guilty of a sexual offense in the third degree if the person engages in sexual contact:

Md. (1976 Repl. Vol. and 1978 Cum.Supp.) defines "sexual contact" to include the intentional touching of the anal or genital area for the purposes of sexual arousal or gratification.

The common question that these appeals present is whether the Assimilative Crimes Act makes the Maryland statute applicable to a federal reservation in Maryland when Congress has enacted 18 U.S.C. § 113, a comprehensive statute with respect to assaults.[3] Stated otherwise, the question is has there been a failure by Congress, notwithstanding the enactment of § 113, to make punishable the acts constituting the commission of a Maryland third degree sexual offense—the necessary premise for making § 464B(a)(1)(iii) applicable to a federal reservation in Maryland under the Assimilative Crimes Act.

In denying Eades' pretrial motion to dismiss the counts of the indictment grounded on the Maryland statute as made applicable by the Assimilative Crimes Act, the district court confined its consideration to the question of whether the enactment of federal § 113(a) (assault with intent to rape) constituted congressional occupation of the subject matter so as to render § 464B(a)(1)(iii)

> (1) With another person against the will and without the consent of the other person, and:
>
> .    .    .    .    .
>
> (iii) Threatens or places the victim in fear that the victim   .   .   .   will be imminently subjected to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping   .   .   ..
>
> (b) *Penalty.*—A person violating the provisions of this section is guilty of a felony and upon conviction is subject to imprisonment for a period of not more than 10 years.

**3.** The text of 18 U.S.C. § 113 is:

§ 113. *Assaults within maritime and territorial jurisdiction*

Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

(a) Assault with intent to commit murder or rape, by imprisonment for not more than twenty years.

(b) Assault with intent to commit any felony, except murder or rape, by fine of not more than $3,000 or imprisonment for not more than ten years, or both.

inapplicable under the terms of the Assimilative Crimes Act. The district court ruled that it did not on the theory that only a conviction under § 113(a) required proof of an intent to rape; a conviction under § 464B(a)(1)(iii) could be had even where the accused had no intent to rape if it were shown that there was a touching of the anal or genital area without the consent of the victim accompanied by a threat or fear of serious physical injury. The ruling of the district court on Wilson's pretrial motion to dismiss also focused upon § 113(a) alone. Unquestionably, the district court restricted its examination of § 113, because counsel for both defendants, in their written motions, claimed only that § 113(a) preempted § 464B(a)(1)(iii).

■ We find it unnecessary to say that either ruling of the district court, limited to the effect of § 113(a), standing alone, on § 464B(a)(1)(iii), was legally incorrect, because we think that the other provisions of § 113 should also have been considered. When all of the provisions of § 113 are considered, we conclude that the Assimilative Crimes Act does not make § 464B(a)(1)(iii) applicable to federal reservations in Maryland.[4]

(c) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine of not more than $1,000 or imprisonment for not more than five years, or both.

(d) Assault by striking, beating, or wounding, by fine of not more than $500 or imprisonment for not more than six months, or both.

(e) Simple assault, by fine of not more than $300 or imprisonment for not more than three months, or both.

(f) Assault resulting in serious bodily injury, by fine of not more than $10,000 or imprisonment for not more than ten years, or both.

**4.** It is an accepted rule of appellate procedure that ordinarily an appellate court will not consider an issue not raised in the court from which the appeal is taken. The rule, however, is not inflexible, and we think that we are justified from departing from the rule in this case for two reasons. First, the various subsections of § 113 are so related to § 113(a) that

The seminal case on the reach of the Assimilative Crimes Act is *Williams v. United States,* 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946). There the accused was convicted of having carnal knowledge of an unmarried female over the age of 16 but under the age of 18 on a federal reservation in Arizona, in violation of Arizona law. The offense was not prohibited carnal knowledge under federal law because federal law requires proof that the victim was under 16 at the time of the offense. It also was not rape or assault with intent to rape under federal law because the required element of force was absent.

The Court held the Arizona law was not applicable under the Assimilative Crimes Act and that the defendant could not be punished thereunder for the following reasons:

> We hold that the Assimilative Crimes Act does not make the Arizona statute applicable in the present case because (1) the precise acts upon which the conviction depends have been made penal by the laws of Congress defining adultery and (2) the offense known to Arizona as that of "statutory rape" has been defined and prohibited by the Federal Criminal Code, and is not to be redefined and enlarged by application to it of the Assimilative Crimes Act. The fact that the definition of this offense as enacted by Congress results in a narrower scope for the offense than that given to it by the State, does not mean that the Congressional definition must give way to the State

> definition. This is especially clear in the present case because the specified acts which would come within the additional scope given to the offense by the State through its postponement of the age of consent of the victim from 16 to 18 years of age, are completely covered by the federal crimes of adultery or fornication. (Footnotes eliminated.)

327 U.S. at 717–18, 66 S.Ct. at 781–82.

We think that under *Williams* neither defendant can properly be convicted of a violation of the Maryland third degree sexual offense. Viewed in its entirety, federal § 113 covers the entire range of assaults from simple assault to assault by striking, assault with a dangerous weapon, assault with intent to commit a felony other than murder or rape, assault resulting in serious bodily injury, and assault with intent to commit murder or rape.[5] The Maryland third degree sexual offense is merely a special form of assault and battery. It is an unwanted touching of the genital or anal area of a person's body under circumstances causing fear for the purpose of sexual arousal or sexual gratification.. One cannot possibly commit a Maryland third degree sexual offense without committing a violation of some portion of federal § 113. Indeed, Eades was convicted of violating § 113(e) with respect to his first victim and § 113(d)[6] with respect to his second victim for the very acts upon which he was twice convicted of violating § 464B(a)(1)(iii), and Wilson was convicted of a violation of

---

a contention that they render § 464B(a)(1)(iii) inapplicable is not totally new and different from the contention that was advanced. Second, we are so persuaded that the Maryland statute is inapplicable that to permit the convictions thereunder to stand would result in manifest injustice. *See generally* Wright, Law of Federal Courts 3rd ed. § 104, p. 523 (1976); *Wratchford v. S. J. Groves and Sons Co.,* 405 F.2d 1061, 1063 (4 Cir. 1969); *Green v. Brown,* 398 F.2d 1006, 1009 (2 Cir. 1968).

5. At common law, an assault did not necessarily require a touching; assault by touching was termed battery. *See* 1 Wharton's Criminal Law and Procedure § 329; R. Perkins, Criminal Law Ch. 2 § 2, p. 106 et seq. (2d ed. 1969); W. LaFave and A. Scott, Criminal Law §§ 81, 82, p. 604 et seq. From the language of § 113, it is

manifest that Congress employed the word "assault" to include battery. *United States v. Chaussee,* 536 F.2d 637 (7 Cir. 1976); *United States v. Anderson,* 425 F.2d 330 (7 Cir. 1970). "[A]n assault is an attempted battery and proof of a battery will support conviction of assault." *United States v. Dupree,* 544 F.2d 1050, 1052 (9 Cir. 1976).

6. Of course Eades could have been convicted of a violation of § 113(d) for the head banging alone without proof that he touched the genital or anal area of his victim; but more significantly, had there been no head banging, Eades could have been convicted of a violation of § 113(e), the lesser included offense, merely upon proof of unwanted touching.

§ 113(a) for the acts for which he was also convicted under the Maryland statute. Thus "the precise acts upon which the convictions of both defendants depend have been made penal" by a congressional enactment proscribing various assaults, and the Maryland statute merely redefines certain types of assaults and establishes a more severe permissible penalty for them. Therefore, the Assimilative Crimes Act does not make the Maryland statute applicable to federal reservations.

We think that our application of the *Williams* case and the conclusion that we reach in these cases accords with the weight of authority. In *United States v. Butler,* 541 F.2d 730 (8 Cir. 1976), it was held that a federal statute punishing acquisition and receipt by felons of firearms that have traveled in interstate commerce preempted a state law proscribing the same type of conduct that had no interstate nexus requirement. The district court had ruled that the phrase "any enactment" in the Assimilated Crimes Act referred to statutes applicable only to a federal enclave, thus the state act was assimilated since the only federal statute applied to persons both off and on a federal enclave. The Court of Appeals rejected this interpretation. It read *Williams* to be concerned primarily with whether Congress had intended to punish the generic conduct in question, not whether Congress had made the precise acts penal. In the instant cases, the conclusion that the Assimilated Crimes Act does not make the Maryland statute applicable is even more compelling, because, as has been shown, it is impossible to violate the Maryland statute without transgressing some provision of federal § 113. Thus, Congress has evidenced an intent to proscribe the precise acts made penal by Maryland.

The Assimilative Crimes Act was also ruled inapplicable in *United States v. Chaussee,* 536 F.2d 637 (7 Cir. 1976), and *United States v. Patmore,* 475 F.2d 752 (10 Cir. 1973), where it was held that 18 U.S.C. § 113(c) (assault with a dangerous weapon) preempted local aggravated battery laws even though the federal crime required proof of specific intent to do bodily harm

and no proof of intentional touching, whereas the state statutes required only intentional striking with a deadly weapon. *See also United States v. Patz,* 584 F.2d 927 (9 Cir. 1978).

In urging affirmance, the government places principal reliance on *United States v. Smith,* 574 F.2d 988 (9 Cir. 1978). There, three inmates of a federal penitentiary committed forcible acts of sodomy upon another male prisoner. They were convicted under the Assimilative Crimes Act by application of a state statute which defines the crime of rape to include such acts. On appeal, they unsuccessfully urged that Congress did not intend to permit reference to state law for punishment of the sexual conduct in question. Specifically, they asserted that federal § 113(b) (assault with intent to commit a felony) precluded application of the state statute.

Their contention was rejected. First, the court noted that "[t]here is no federal statute punishing the specific acts perpetrated by a homosexual rapist." 574 F.2d 990. The court then read *Williams* to require the federal assault statute to punish the precise acts upon which the Assimilative Crimes Act conviction depends in order to oust application of the state statute. In applying that test, the court said that the state statute required sexual contact between the perpetrator and the victim, while the federal statute does not require physical contact. Even where the victim is physically touched, the federal statute does not require the contact to be a sexual one. 574 F.2d at 991. Thus, the court concluded that the state statute was not precluded and the convictions should stand.

■ We express no view as to whether *Smith* should be followed because we think that it is distinguishable from the instant appeals. Unlike the Ninth Circuit in *Smith,* we are dealing with conduct in each case which, if it constitutes a violation of Maryland law, necessarily constitutes a violation of some subsection of federal § 113. In short, there is a federal statute which punishes the precise conduct proscribed by

Maryland law. The government's reliance on the principle in *Smith* might be persuasive were we dealing only with § 113(a) as did the district court in both of the instant cases. But, as we have said earlier, we think that all of the subsections of § 113 should be considered in determining whether § 464B(a)(1)(iii) has been precluded, not merely § 113(a). So considered, we think that the Maryland statute has been precluded and the convictions thereunder must be reversed.

### III.

Eades contends that the joinder of count 9 (entry upon the Naval Academy for the purpose of committing theft), based upon his discovery on the premises while engaged in cutting locks off of lockers on January 30, 1978, with the other charges against him was not authorized by Rule 8(a), F.R. Crim.P. We disagree.

■ Rule 8(a) permits joinder, *inter alia,* of two or more offenses "based . . . on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Under the facts of this case, we think that this language of Rule 8(a) authorized joinder. The events of January 30, 1978 occurred only two days after the first incident and five days before the second assault. On all three occasions, defendant was in a locker room of the United States Naval Academy. Indeed, Eades indicated in a statement that he was there on January 30 for the purpose of stealing from lockers when he happened on his first victim. There was evidence also that Eades was in the locker room area on February 3, 1978 and the morning of February 4, 1978, prior to the attack on the second victim. The repeated unauthorized entries into the same area of the Naval Academy with such close proximity in time establishes, we think, the existence of a common scheme or plan, so as to permit joinder.

■ Given that the initial joinder of count 9 with the other charges was authorized by Rule 8(a), we see no abuse of discretion on the part of the district court in denying a severance under Rule 14. The

evidence of his other entries would have been admissible in a trial on count 9 had count 9 been severed. F.R.E. 404(b). Moreover, the evidence of guilt under count 9 was well nigh irrefutable—Eades was caught redhanded. *See United States v. Jamar,* 561 F.2d 1103, 1107 (4 Cir. 1977). The possibility that he was prejudiced as to this count by a joint trial was extremely remote.

■ Nor do we see any abuse of discretion in the district court's failure to sever the trial on counts 1–4 (based upon the incident of January 28) from the trial on counts 5–8 (based upon the incident of February 4). Here again, evidence of either assault would have been admissible in the trial of the other assault had trial on the two groups of counts been severed. The fact that the government's evidence was stronger on one group of counts than the other, that defendant offered an alibi as to one event and not the other, and that defendant wished to testify as to one event without risking cross-examination as to the other, taken singly or collectively, does not compel severance.

No. 78–5216—AFFIRMED IN PART; REVERSED IN PART.

No. 79–5027—CONVICTION UNDER COUNT 5 REVERSED.

HAYNSWORTH, Chief Judge, dissenting:

I agree that Wilson's conviction under the Assimilative Crimes Act of a violation of Maryland's § 464B should not be allowed to stand. He was convicted of an assault with intent to commit rape in violation of 18 U.S.C.A. § 113(a), a greater offense than a third degree sexual offense under the Maryland statute. I think there was preemption there.

I cannot agree, however, that 18 U.S.C.A. § 113 preempted the convictions of Eades under the Maryland statute.

If 18 U.S.C.A. § 113 may be viewed as a generally comprehensive proscription of assaults within the federal maritime and ter-

ritorial jurisdiction, it surely is not a comprehensive federal statute dealing with the particular problem of sexual assaults. It literally proscribes assaults with intent to commit rape, but there is no other reference to sexual offenses. I agree that an aggravated sexual assault would be a violation of 18 U.S.C.A. § 113(e) proscribing simple assault punishable by the imposition of a fine of not more than $300 or imprisonment of not more than three months or both. It seems plain to me, however, that Congress intended in that subsection to deal only with minor offenses and not with aggravated sexual assaults. *United States v. Smith,* 574 F.2d 988 (9th Cir. 1978), is illustrative. I cannot ascribe to the Congress, in the enactment of § 113(e) dealing with simple assault, an intention to preclude prosecution under the Assimilative Crimes Act for the serious, forceable sodomy offenses of which the three defendants in that case were convicted.

In contrast to § 113 of the federal statute, the Maryland sexual offense statutes deal comprehensively with such offenses. They are classified into six separate degrees. Some acts may be prosecuted under more than one section, leaving prosecutor and jury some room for leniency, but substantial gradations of offenses is surely appropriate to the problem. There are no such gradations under the federal statute.

As the majority notices, Eades could have been convicted of assault by striking in violation of § 113(d) when he banged the victim's head on the floor, but the sexual offense would be wholly irrelevant to a conviction under that subsection. At most, it could be treated in the sentencing as an aggravating circumstance.

In short, I do not see § 113 as a comprehensive treatment of the problem of sex offenses on federal enclaves. Some sex offenses are serious and widely regarded as felonious, though not assaults with an actual intent to commit rape. I cannot believe that Congress, in enacting a simple assault statute providing punishment appropriate to a minor misdemeanor, could have intended to prohibit prosecution under the Assimilative Crimes Act of serious sex offenses.

I respectfully dissent.