**UNITED STATES of America**

v.

**Thomas BROADNAX.**

Crim. No. 88–00119–A.

United States District Court,
E.D. Virginia.

July 22, 1988.

David H. Hopkins, Fairfax, Va., for plaintiff.

Barry Tapp, Asst. U.S. Atty., Alexandria, Va., for defendant.

MEMORANDUM OPINION

ELLIS, District Judge.

This drug prosecution grows out of a routine search of defendant Thomas Broadnax, who is, and was at the relevant time, an inmate at the Occoquan Facility, Lorton Reformatory, Lorton, Virginia, a District of Columbia penal institution. Correctional Officers found in defendant's possession ten foil packets, three paper packets and two rolled cigarettes. Subsequent analyses of these materials disclosed that the packets contained marijuana and phencyclidine. Defendant was thereafter charged in a four count indictment. The Counts are as follows:

Count I Possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1).

Count II Possession with intent to distribute phencyclidine, in violation of 21 U.S.C. § 841(a)(1).

Count III Possession of phencyclidine by a prisoner, in violation of 18 U.S.C. § 13, assimilating Va.Code Ann. § 53.1–203(5).

Count IV Possession of marijuana by a prisoner, in violation of 18 U.S.C. § 13, assimilating Va.Code Ann. § 53.1–203(6).

Defendant now moves to dismiss Counts III and IV, asserting that these counts constitute an improper assimilation of the Virginia Code. For the reasons stated herein, the Court denies defendant's motion to dismiss.

## ANALYSIS

The Assimilative Crimes Act, 18 U.S.C. § 13 [hereinafter the ACA], permits the government to adopt and apply state penal statutes to any "act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed within the jurisdiction of the State...." 18 U.S.C. § 13. The purpose of the ACA is to fill in the "gaps" in the criminal law applicable to federal enclaves where such gaps result from the failure of Congress to pass legislation prohibiting certain conduct. Defendant asserts that the ACA is inapplicable here because the conduct complained of in Counts III and IV, *i.e.* possession of illegal drugs by prisoners, is covered "generically" by Congressional statutes, *i.e.* 21 U.S.C. § 841, which prohibits the possession of illegal drugs with intent to distribute, and 21 U.S.C. § 844, which prohibits "simple" possession. The ACA, according to defendant, requires that state law not be assimilated where any act of Congress punishes the "generic" conduct.

The government urges a different construction of the ACA. It asserts that assimilation is inappropriate under the ACA only if the *precise* or *specific* act or omission has been made penal under federal law. Accordingly, under the government's analysis, assimilation of Va.Code Ann. § 53.1–203(5) and (6) is not precluded because here the requisite "gap" is present: federal sections 841 and 844 do not specifically prohibit the possession of illegal drugs by a federal defendant in a state penal institution.

Not surprisingly, there is a split of authority on the appropriate test to determine applicability of the ACA. Some courts focus on whether the federal act punishes the *generic* conduct in issue, while others focus on whether the federal act punishes the *specific* conduct for which the ACA is invoked.[1] This split seems to be the result of different interpretations of the Supreme Court's decision in *Williams v. United States,* 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946). There, defendant was convicted of statutory rape under Arizona law, assimilated under the ACA, for having sexual intercourse with a girl who was under eighteen years of age. Under federal law, a rape conviction required proof of the use of force by the offender and an absence of consent by the victim, and the federal crime of having carnal knowledge of a girl required proof that the girl was under sixteen years of age. As the girl was over sixteen years of age and there was no proof of force, the defendant could only be convicted under state law, not federal law. His conviction was set aside by the Supreme Court as an improper use of the ACA to expand the congressional definition of a penal offense.

Some courts have interpreted *Williams* to mean that "the government may not proceed under state law when the 'precise act' prohibited by the state statute is de-

---

**1.** *Compare United States v. Butler,* 541 F.2d 730 (8th Cir.1976) (in determining whether the ACA is applicable, the issue is whether Congress had intended to punish the *generic* conduct in question, not whether Congress had made the precise act penal) *with United States v. Smith,* 574 F.2d 988 (9th Cir.) (requiring an act of Congress to punish the *precise acts* upon which an ACA conviction depends in order to oust application of the state statute), *cert. denied sub nom. Williams v. United States,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978).

fined and prohibited by a federal statute." *United States v. Brown,* 608 F.2d 551, 554 (5th Cir.1979) (citing *United States v. Big Crow,* 523 F.2d 955 (8th Cir.1975); *United States v. Patmore,* 475 F.2d 752 (10th Cir. 1973)).[2] Other courts have interpreted *Williams* to mean that the Supreme Court "was primarily concerned not with whether the *precise acts* had been made penal, but with the discernment of the intent of Congress to punish the *generic* conduct in question." *Butler,* 541 F.2d at 735 (emphasis in original).[3]

The Fourth Circuit has not yet ruled on whether the "generic" or "specific" test is appropriate. In *United States v. Eades,* 615 F.2d 617 (4th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981), the court seemingly recognized the split of authority regarding the generic/specific interpretation, but ultimately found that it did not need to decide the issue. There, defendant was convicted of, *inter alia,* assault with intent to rape under 18 U.S.C. § 113(a), and a third degree sexual offense for engaging in sexual contact with another against their will, in violation of Md.Code Ann. Art. 27, § 464B(a)(1)(iii) (Repl. Vol. 1976 & Supp. 1978) (assimilated under 18 U.S.C. § 13). Defendant claimed that federal § 113(a) constituted congressional occupation of sexual assault crimes so as to render Maryland § 464B(a)(1)(iii) inapplicable under the ACA. The district court held that there

was no federal preemption under either the "generic" or "specific" test on the theory that a conviction under § 113(a) required proof of an intent to rape, whereas a conviction under § 464B(a)(1)(iii) could be obtained even where the accused had no intent to rape. *United States v. Eades,* 455 F.Supp. 436, 439 (D.Md.1978).

On appeal, the Fourth Circuit reversed. The court ruled that *all* the provisions of federal section 113 should be considered in determining whether the ACA can be invoked. Thus, the Fourth Circuit found it "unnecessary to say that [the] ruling of the district court, limited to the effect of § 113(a), standing alone, on § 464B(a)(1)(iii), was legally incorrect." 615 F.2d at 621.[4] The court ultimately concluded that when all the provisions of § 113 were considered, it was clear that the ACA was inapplicable because the precise acts upon which defendant was convicted under the Maryland statute were already made penal by the various provisions of § 113.

> Viewed in its entirety, federal § 113 covers the entire range of assaults from simple assault to assault by striking, assault with a dangerous weapon, assault with intent to commit a felony other than murder or rape, assault resulting in serious bodily injury, and assault with intent to commit murder or rape. The Maryland third degree sexual offense is merely a special form of assault and bat-

---

**2.** In *Brown,* defendant was charged under assimilated state law with assaulting a child in violation of a state child abuse statute. Defendant argued that assimilation was inappropriate because the conduct charged was punishable under the federal assault statute. The Fifth Circuit, in construing *Williams,* held that assimilation was appropriate, reasoning that "[a]lthough the acts with which the defendant was charged could be punishable under the federal assault statute, the 'precise act' of injury to child [was] not proscribed by federal law." *Brown,* 608 F.2d at 554.

**3.** In *Butler,* the Eighth Circuit recognized that other courts, in discerning congressional intent in the ACA context, looked to whether precise acts have been prohibited rather than the generic conduct. "In determining the applicability of the ACA reference is often made to the question as to whether the precise acts have been made

punishable by Congress." 541 F.2d at 735 n. 10. *See, e.g., Fields v. United States,* 438 F.2d 205 (2d Cir.), *cert. denied,* 403 U.S. 907, 91 S.Ct. 2214, 29 L.Ed.2d 684 (1971); *United States v. Johnson,* 426 F.2d 1112 (7th Cir.), *cert. denied,* 400 U.S. 842, 91 S.Ct. 86, 27 L.Ed.2d 78 (1970); *Hockenberry v. United States,* 422 F.2d 171 (9th Cir. 1970). The Eighth Circuit, however, found that the analysis in *Williams* "demonstrates that the [Supreme] Court was primarily concerned not with whether the *precise acts* had been made penal, but with the discernment of the intent of Congress to punish the *generic* conduct in question." *Butler,* 541 F.2d at 735.

**4.** The appellate court noted that the district court restricted its examination of the preemption issue to subsection (a) of § 113 because defense counsel claimed that § 113(a), by itself, preempted the Maryland statute. 615 F.2d at 621.

tery.... Thus the "precise acts upon which the conviction of defendant depend[s] have been made penal" by a congressional enactment proscribing various assaults, and the Maryland statute merely redefines certain types of assaults and establishes a more severe permissible penalty for them. Therefore, the Assimilative Crimes Act does not make the Maryland statute applicable to federal reservations.

615 F.2d at 622–23. In so deciding *Eades*, the Fourth Circuit found it unnecessary to choose between the "generic" test set forth in *Butler* and the "specific" test set forth in *Smith*.

> We express no view as to whether *Smith* should be followed because we think that it is distinguishable from the instant appeals. Unlike the Ninth Circuit in *Smith*, we are dealing in conduct ... which, if it constitutes a violation of Maryland law, necessarily constitutes a violation of some subsection of federal § 113. In short, there is a federal statute which punishes the precise conduct proscribed by Maryland law. The government's reliance on the principle in *Smith* might be persuasive were we only dealing with § 113(a) as did the district court.... But, as we have said earlier, we think that all of the subsections of § 113 should be considered in determining whether § 464B(a)(iii) has been precluded, not merely § 113(a). So considered, we think that the Maryland statute has been precluded.

615 F.2d at 623–24.

Although the *Eades* decision provides little guidance on whether the "generic" test or "specific" test is appropriate, the decision underscores the importance of reviewing *all* pertinent federal statutes and their legislative history in determining the applicability of the ACA in a given case. Here, as in *Eades*, it is unnecessary to choose between either test, because a review of other relevant federal law discloses a congressional intent to create a "gap" in instances where a federal defendant is in possession of illegal drugs while incarcerated in a state institution.

Defendant, to be sure, is correct in asserting that 21 U.S.C. §§ 841 and 844 address, in generic terms, various aspects of illegal narcotic possession. While these sections do not explicitly refer to the added factor of defendant's status as an inmate at a correctional facility, defendant argues that this factor is encompassed by the broad, generic sweep of the sections. In this regard, however, defendant overlooks the existence, purpose, and legislative history of 18 U.S.C. § 1791. This statute prohibits, *inter alia*, any inmate of a federal prison from possessing a narcotic drug or controlled substance. An earlier version of section 1791 prohibited only the trafficking in contraband articles. In 1984, it was amended to include "possession" as a prohibited offense. *See* Pub.L. No. 98–473, 98 Stat. 1837. Congress enacted this amendment to prohibit the possession of drugs in prison because "a prison ... often houses numerous former addicts," and the presence of drugs "is most disruptive of prison safety and discipline." S.Rep. No. 225, 98th Cong., 2d Sess. 380–82, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3520–22 [hereianfter Report]. Importantly for the motion at bar, the legislative history of section 1791 expressly and unambiguously provides that the statute does not apply to federal defendants incarcerated in state or local prisons:

> [The statute] was deliberately written to apply only to inmates (whether convicted in a Federal or State court) in a Federal penal institution. The Committee has not sought to extend coverage to Federal defendants incarcerated in State institutions, believing that the primary interest in barring contraband from those institutions lies with State or local officials.

Report at 3522. Clearly, the requisite "gap" in federal law necessary to invoke the application of 18 U.S.C. § 13 is present here. Indeed, as evidenced by the legislative history cited above, Congress expressly created a "gap," leaving to states and localities the promulgation of rules, regulations, and laws governing the administration of state institutions. The ACA applies in precisely these circumstances.

In sum, the ACA plainly permits the assimilation in this case of the Virginia Code provisions in Counts III and IV. Here, there is a gap; no federal statute covers the precise activity in the case at bar, namely, possession by a *prisoner* in a District of Columbia penal facility. Federal statutes cover some aspects of the charged behavior, but no such statute encompasses, in precise terms, all such aspects. Similarly, 18 U.S.C. § 1791 addresses the possession of "contraband," including illegal drugs, at any "federal penal or correctional institution." Lorton Reformatory is not a federal institution; it is a District of Columbia facility. Thus, Section 1791 is inapplicable. Since no federal statute covers all aspects of the defendant's acts and status, and since Congress expressly created a gap, assimilation of the Virginia Code is entirely appropriate under the ACA. Accordingly, defendant's motion to dismiss is denied[5] and this Court need not decide today whether the generic test or the specific test is appropriate in determining whether assimilation is warranted.[6]

An appropriate Order will enter.

---

**5.** Defendant's motion to dismiss focuses solely on the assimilated counts, Counts III and IV. Defendant has not targeted Counts I and II, nor has he raised the question whether the government may proceed under both federal section 841(a) and Virginia section 53.1–203(5) and (6). Thus, the Court need not decide this question. Worth noting, however, is that the question whether there are present here four offenses, as charged in the indictment, or only two, as defendant might claim, may be answered by the following statement in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932):

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182. The government will likely argue that given this test, the inclusion of four offenses in the indictment is arguably appropriate, inasmuch that the Virginia statute requires proof of an additional fact: that defendant be a prisoner. *See United States v. Nation,* 832 F.2d 71 (5th Cir.1987) (holding that, under *Blockburger* test, separate counts for (i) shipping and transporting a stolen firearm and (ii) possession of a firearm by a felon were appropriate, as one count required proof that defendant was a convicted felon while the other did not). On the other hand, it may be significant that research discloses no cases where a defendant has been charged or convicted under both 21 U.S.C. §§ 841, 844, and 18 U.S.C. § 1791.

**6.** It is doubtful that either test is wholly satisfactory. Talismanic tests of this sort rarely are. Only a searching examination of the language, structure, and legislative history of the federal enactment answers this question. If a review of the language, structure, and history of the federal statute reflects that the conduct in issue is covered, then assimilation is inappropriate. *See Williams v. United States,* 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946).