39 F.3d 1179
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
SCRAPP INVESTMENT CO., INC., Claimant-Appellant,
and
2114-2116 EDMONDSON AVENUE, with all buildings,
appurtenances, and improvements thereon, Defendant.
UNITED STATES of America, Plaintiff-Appellee,
v.
ANNE ARUNDEL HOSPITAL BOND # R000000689, Defendant,
BALTIMORE CITY BOND # R4435, Defendant,
and
SCRAPP INVESTMENT CO., INC., Claimant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mary S. WILLIAMS; Terry A. Henderson, Claimants-Appellants,
and
2206 Park AVENUE, Defendant.
 Nos. 93-2432, 94-1111, 94-1128.
 United States Court of Appeals, Fourth Circuit.
 Argued: September 26, 1994.
Decided: October 31, 1994.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. M. J. Garbis, District Judge. (CA-92-1848-MJG, CA-92-3014-MJG, CA-92-2506-MJG)
 Michael Edward Marr, Baltimore, Maryland, for Appellant. Bonnie S. Greenberg, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and MICHAEL and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 This is a consolidated appeal of three forfeiture proceedings arising under 21 U.S.C. Sec. 881(a)(6) and (7) in the United States District Court for the District of Maryland. The district court ordered the forfeiture of: (1) real and personal properties owned by Scrapp Investment Company, Inc. (Scrapp), which, in turn, is owned by James E. Rogers and his daughter, Mary S. Williams; and (2) real property formerly titled in the names of Mary Williams and her sister, Terry A. Henderson. We affirm.
 
 I.
 A.
 
 2
 The first forfeited property (commonly known as the "Underground"), which was titled in Scrapp's name, is a former nightclub located at 2114-2116 Edmondson Avenue in Baltimore City, Maryland, immediately adjacent to an active open air drug market. Beginning in 1984, Scrapp leased the Underground to Barry Henderson, a relative of Melvin Williams, who is Mary Williams' husband and Rogers' son-in-law. Under the terms of the oral lease, Henderson was to operate the Underground as a nightclub on the weekends only. In return, Henderson agreed to pay Scrapp $2000 per month for use of the Underground.
 
 
 3
 In February of 1986, Henderson and several other individuals were arrested following a shooting incident at the Underground. During the course of the arrest, police recovered narcotics and a handgun from the property. This incident, coupled with tips from police informants, later allowed the police to obtain a warrant to search the Underground. Upon execution of the warrant on November 30, 1986, the police recovered four weapons and several controlled substances.[1] Following the search of the Underground, Rogers, as president of Scrapp, was permitted to secure the property and the police informed Rogers that controlled substances had been recovered during the search of the Underground.
 
 
 4
 In early 1991, a confidential police informant witnessed Henderson sell half an ounce of heroin to an individual inside the Underground. Henderson later met with the informant and an undercover police officer at the Underground to arrange another heroin sale. In September of 1991, another police informant witnessed Henderson and two other individuals at the Underground "cutting" and preparing heroin for distribution.
 
 
 5
 On May 7, 1992, following numerous tips and arrests in connection with the activities occurring at the Underground, the police arrested Henderson and conducted another search of the Underground. Henderson was subsequently indicted for conspiracy to distribute heroin. On July 2, 1992, as a result of the criminal violations occurring on the premises, the Underground was seized by the United States Marshal's Service pursuant to an in rem arrest warrant.
 
 
 6
 James Rogers, on behalf of Scrapp, also seeks to recover two bearer bonds forfeited to the federal government. On May 7, 1992, a federal search warrant was executed at the home of Mary Williams. During the search, Drug Enforcement Administration agents and local police seized two bonds--a Baltimore City Pension Funding Bond (Registered No. R-4435) in the amount of $45,000 and an Anne Arundel Hospital Bond (Registered No. R000000689) in the amount of $25,000. Both bonds were allegedly acquired by Scrapp with funds traceable to the sale of a property condemned by Baltimore City. Scrapp originally purchased the condemned property in 1983 or 1984, at which time Melvin Williams, Mary Williams' husband, was president of Scrapp. Melvin Williams was convicted of attempting to distribute cocaine and related charges in 1984 and is now serving a twenty-four-year federal prison term arising out of that conviction. The federal government seized the Scrapp bonds pursuant to 21 U.S.C. Sec. 881(a)(6), alleging that the bonds were the fruits of Melvin Williams' criminal enterprise.
 
 
 7
 Finally, Mary S. Williams and her sister, Terry Henderson, seek to recover forfeited real property located at 2206 Park Avenue in Baltimore, Maryland. Melvin and Mary Williams originally purchased the house in 1981, reportedly for the sum of $39,900. However, shortly after Melvin Williams was convicted in 1985, title in the house was transferred to the sole ownership of Mary Williams.
 
 
 8
 In May of 1987, the Internal Revenue Service (IRS) assessed taxes in the amount of $425,055.00 against Melvin and Mary Williams for unreported income during the fiscal years 1980 through 1984. In a decision issued on March 17, 1992, the United States Tax Court upheld the assessment. Prior to the decision of the tax court, although while the case was pending, Mary Williams executed a quitclaim deed transferring title in the house to her sister, Terry Henderson, for consideration in the amount of five dollars. Henderson never occupied the house, never paid real estate taxes on the house, nor did she ever receive rent from anyone who was living in the house. Nonetheless, as the legal owner of the property, Henderson originally filed a claim, along with Mary Williams, to recover the seized house. However, Henderson subsequently withdrew her claim to the property prior to the district court's order that the house be forfeited to the federal government.
 
 
 9
 Alleging that the transfer of the home from Mary Williams to her sister violated Internal Revenue Code Secs. 7201 and 7206, as well as constituting an attempt to launder illegally obtained funds, in violation of 18 U.S.C. Sec. 1956, the federal government obtained a seizure warrant. Consequently, the house was seized by the United States Marshal's Service on September 11, 1992.
 
 B.
 
 10
 Scrapp, Mary Williams, and Terry Henderson now appeal the rulings of the district court with respect to the Underground, the bonds and the house. The trial court found that, with respect to the Underground, Scrapp had failed to establish the innocent owner defense. Accordingly, the trial judge entered summary judgment in favor of the United States and ordered that the Underground be forfeited pursuant to 18 U.S.C. Sec. 881(a)(7). With respect to the bonds, the district court dismissed James Rogers' claim on behalf of Scrapp in light of Rogers' failure to comply with discovery procedures. Finally, with respect to the house, the district court found that the United States had succeeded in establishing probable cause that "the property involved in [the] financial transaction represent[ed] the proceeds of some form of unlawful activity...." 18 U.S.C. Sec. 1956(a)(1). Therefore, the trial judge granted summary judgment in favor of the United States and ordered forfeiture pursuant to 21 U.S.C. Sec. 981.
 
 
 11
 On appeal, claimants Scrapp, Williams, and Henderson argue that the trial court improperly ordered forfeiture in each case. First, with respect to forfeiture of the Underground, Scrapp contends that the district court failed to recognize a genuine dispute as to material facts presented by the case. As to the bonds, Scrapp argues that dismissal of its claim for failure to comply with discovery procedures was error and the district court should have held that forfeiture of the bonds was proscribed by the limitations period contained in 19 U.S.C. Sec. 1621. Finally, with respect to forfeiture of the home, Mary Williams and Terry Henderson assert that the trial court erred in applying 18 U.S.C. Sec. 1956. Additionally, the claimants raise two new constitutional arguments on appeal. They contend that the forfeitures constituted excessive fines in violation of the Eighth Amendment, and that they were denied a hearing prior to seizure of their property contrary to the Due Process Clause of the Fifth Amendment.
 
 II.
 
 12
 We review the grant of summary judgment de novo. Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 1999 (1993). Summary judgment is appropriate only when the record, taken in its entirety, demonstrates "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Hinkleman v. Shell Oil Co., 962 F.2d 372, 375 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 831 (1992). However, the summary judgment standard does not require that the evidence be uncontroverted. Rather, it simply requires that there be no "genuine" factual dispute presented by the pleadings. Thus, the key inquiry is whether the evidence is so one-sided that no fair-minded jury could do other than grant judgment to the summary judgment movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 
 13
 In a forfeiture proceeding the United States must put forth sufficient evidence to establish probable cause to believe that there exists a "substantial connection" between the seized property and the prohibited drug activity. United States v. One Parcel of Real Estate Located at 7715 Betsy Bruce Ln., Summerfield, NC, 906 F.2d 110, 112-113 (4th Cir.1990). "Probable cause" is the same standard that applies under the Fourth Amendment. United States v. Thomas, 913 F.2d 1111, 1114 (4th Cir.1990). Consequently, probable cause in a forfeiture case can be established by "less than prima facie proof but more than mere suspicion." Betsy Bruce Lane, 906 F.2d at 112.
 
 
 14
 Once the government has established probable cause under 21 U.S.C. Sec. 881(a)(7), the burden shifts to the claimant to demonstrate by a preponderance of the evidence either that the property is not connected with illegal drug activity, or that the claimant did not know of or consent to such illegal use. Thomas, 913 F.2d at 1114; Betsy Bruce Lane, 906 F.2d at 111. Where a claimant fails to meet this burden, the showing of probable cause will be sufficient to warrant summary judgment in favor of the government. 906 F.2d at 111.
 
 III.
 A.
 
 15
 With respect to forfeiture of the Underground, the record before us contains a total of nine affidavits[2] alleging that the Underground was used as center for drug activity. These affidavits also set forth several specific instances of illegal drug activity on the part of Scrapp's lessee, Barry Henderson. In addition, the record contains uncontroverted evidence that Henderson was arrested in both 1986 and 1992 on drugrelated charges and that illegal drugs were seized from the Underground. It is also undisputed that Henderson was indicted on drug conspiracy charges following his 1992 arrest. Therefore, it is obvious that the trial court was not clearly erroneous in finding that the United States had put forth suficient evidence to establish probable cause to believe a "substantial connection" existed between the Underground and prohibited drug activity.[3] Scrapp sought to rebut this probable cause by demonstrating that it neither knew of, nor consented to, the drug activity taking place on its property. This is the so-called "innocent owner" defense, as set forth in 21 U.S.C. Sec. 881(a)(6).
 
 
 16
 The district court concluded that Scrapp failed to establish the innocent owner defense by a preponderance of the evidence; that conclusion is amply supported by the record. In fact, as the district court noted, the only evidence Scrapp presented in support of its innocent owner defense was general denials contained in its answers to the government's interrogatories. Furthermore, the evidence strongly suggests that Scrapp, through its president, James Rogers, had actual knowledge of Henderson's activities at the Underground. During his deposition, Rogers admitted being told by police in 1986 that the Underground was a "drug haven." In addition, police affidavits show that Rogers was informed of the 1986 search of the Underground, as well as the recovered narcotics, and that Rogers was even allowed to secure the premises following the search.
 
 
 17
 The district court also concluded that Scrapp failed to meet its burden of proving lack of consent. Since Scrapp, through Rogers, was informed of the search of the Underground in 1986 and the items seized therefrom, Scrapp was required to take affirmative action to curtail the drug use on its property in order to establish lack of consent. In the absence of such action, Scrapp's consent to the illegal use of the Underground may be inferred. United States v. Certain Real Property and Premises, Known as 418 57th St., Brooklyn, NY, 922 F.2d 129, 132 (2d Cir.1990). Again, the only evidence offered by Scrapp to show lack of consent was periodic inspections of the Underground that Rogers conducted following Henderson's 1986 arrest. The trial court properly concluded these inspections were insufficient action to establish lack of consent by a preponderance of the evidence.[4] Accordingly, the district court properly granted summary judgment in favor of the government as to the Underground. Betsy Bruce Lane, 906 F.2d at 111.
 
 B.
 
 18
 On October 23, 1992, the complaint with respect to the bonds, and accompanying interrogatories and document requests were filed; on November 2, 1992, these documents were served on Rogers. On November 12, 1992, Rogers filed his answer to the complaint without answering the interrogatories. The government reminded Rogers that Supplemental Rule C(6) for Certain Admiralty and Maritime Claims, as incorporated by reference in 18 U.S.C. Sec. 981(b)(2),[5] provides that when interrogatories are served with the original complaint answers to those interrogatories must be furnished contemporaneously with the claimant's answer to the complaint. The government sought responses to its interrogatories twice by written request and several times by telephone. However, Rogers continued to refuse to answer them, asserting that the forfeiture was barred by the statute of limitations. Because of his refusal to respond to the interrogatories, the government moved to strike Rogers' claim to the two seized bonds. On October 7, 1993, the district court granted that motion, noting that Rogers' blanket assertion of an affirmative defense did not relieve him of his obligation to comply with discovery procedures. Because Rogers, on behalf of Scrapp, was the only verified claimant to the bonds, there remained no other claimants following the district court's October 7 order. Accordingly, on October 25, 1993, the district court ordered that the bonds be condemned.
 
 
 19
 Rogers claims that these rulings were error because, he asserts, the interrogatories were improperly served on him in his individual or personal capacity, rather than as a representative of Scrapp. This argument, however, is simply not borne out by the facts. Rogers never asserted a claim to the bonds in his individual or personal capacity. The only claim to the bonds was filed by Scrapp, through Rogers, as an officer of Scrapp. Indeed, in that verified claim, Rogers specifically stated that he was "duly authorized to make this claim on behalf of Scrapp" and was the "duly authorized agent of Scrapp." Thus, Rogers clearly claimed the property on behalf of Scrapp and just as clearly the government propounded document requests and interrogatories on Rogers, as Scrapp's agent. The district court was entirely justified in striking the claim to the bonds when the only claimant to them--Rogers, on behalf of Scrapp--failed to respond to the interrogatories.
 
 C.
 
 20
 Regarding the house, claimants Mary Williams and Terry Henderson argue that the trial court misapplied 18 U.S.C. Sec. 1956 in granting summary judgment in favor of the United States. This statute, known as the "Anti-laundering" statute, seeks to prevent those engaged in illegal activities from attempting "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. Sec. 1956(a)(1)(B)(i). The Anti-laundering statute also prohibits conduct in violation of sections 7201 and 7206 of the Internal Revenue Code. 18 U.S.C. Sec. 1956(a)(1)(A)(ii).
 
 
 21
 The district court concluded that the government had succeeded in establishing probable cause to believe that the house was transferred from Mary Williams to Terry Henderson in violation of 18 U.S.C. Sec. 1956. The record demonstrates that Mary Williams and her husband, Melvin Williams, purchased the home in 1981, following a drug-related conviction of Melvin Williams. Further, the house was purchased for a recorded sum of $39,900.00, during a year in which the Williamses reported their marital income on their federal income tax return as only $18,328.04. Moreover, in May, 1987, the IRS assessed $425,055.00 in taxes jointly against the Williamses for unreported income. Four years later, while the case was pending in the tax court, Mary Williams, who was then the sole owner, transferred title in the house to Terry Henderson in exchange for five dollars. As Henderson told a grand jury, this transfer was intended to avoid attachment of the house by the IRS to satisfy the overdue taxes. Based on this evidence, the district court properly found probable cause to believe that the transfer from Mary Williams to Terry Henderson was substantially connected to a violation of 18 U.S.C. Sec. 1956.
 
 
 22
 The burden then shifted to claimants Williams and Henderson to show by a preponderance of the evidence that no such violation of 18 U.S.C. Sec. 1956 occurred or, in the alternative, to establish the "innocent owner" defense. Thomas, 913 F.2d at 1114; Betsy Bruce Lane, 906 F.2d at 111. As the district court noted, general denials of the allegations set forth by the government do not suffice to rebut the government's showing of probable cause. United States v. Parcels of Real Property, Known as 1933 Commonwealth Ave., Newton, MA, 913 F.2d 1, 4 (1st Cir.1990). Therefore, the mere fact that the pleadings of claimants Williams and Henderson generally deny any violation of 18 U.S.C. Sec. 1956 is not sufficient to rebut probable cause. The only additional evidence offered by the claimants is the statement by Mary Williams, in her Verified Claim, that the transfer of the house was intended to be a "will substitute," in case Mary Williams were to predecease her children. This "will substitute" defense, even if proven by a preponderance of the evidence, would not in any way establish compliance with 18 U.S.C. Sec. 1956. The district court, thus properly concluded that the claimants offered insufficient evidence to rebut the government's showing of probable cause. Accordingly, summary judgment was appropriate with respect to the house. Betsy Bruce Lane, 906 F.2d at 111.
 
 IV.
 
 23
 Finally, the claimants raise two issues on appeal, which were not briefed, argued, or in any way raised below. First, they contend that forfeiture of their property in each case constitutes an excessive fine, in violation of the Eighth Amendment of the United States Constitution. Second, they claim that they were denied their rights to procedural due process under the Fifth Amendment of the United States Constitution when their property was seized by the federal government without a prior notice or a hearing.
 
 
 24
 "It is an accepted rule of appellate procedure that ordinarily an appellate court will not consider an issue not raised in the court from which the appeal is taken." United States v. Eades, 615 F.2d 617, 621 n. 4 (4th Cir.1980), reh'g en banc, 633 F.2d 1075, cert. denied, 450 U.S. 1001 (1981). We see no reason to depart from the usual rule in this case. Accordingly, since the claimants failed to raise these issues in the district court, we decline to address them for the first time on appeal.
 
 AFFIRMED
 
 
 [1]
 Among the illegal drugs seized were 89 envelopes of marijuana, 106 capsules of cocaine and 36 glassine bags of heroin
 
 
 [2]
 Of these nine affiants, five are Baltimore City police officers, three are federal special agents, and one is a pastor of church located in the neighborhood of the Underground
 
 
 [3]
 Scrapp argues that the district court erred in considering evidence of drug activity occurring prior to June of 1987 in order to determine whether the government had established probable cause. According to Scrapp, the five-year limitations period contained in 19 U.S.C. Sec. 1621, which requires forfeiture actions to be instituted within five years of the discovery of the illegal activity, precludes a court from admitting evidence of illegal activity that allegedly occurred more than five years prior to initiation of the forfeiture action. However, this Court has held to the contrary and we find no basis in Scrapp's position for abandoning our precedent. See Betsy Bruce Lane, 906 F.2d at 113
 
 
 [4]
 We note that the fact that Rogers felt compelled to make the unannounced inspections at all tends to negate Scrapp's assertion of lack of knowledge
 
 
 [5]
 The Supplemental Rules for Certain Admiralty and Maritime Claims apply to statutory condemnation proceedings that are analogous to in rem maritime actions, such as the present case, even where such proceedings take place outside the admiralty and maritime jurisdiction. Supp. Admiralty and Maritime Claims R. A